Hitchcock, C. J.,
dissenting. Not concurring in opinion with the majority of the court in this case, but believing that the bill should be dismissed, it is proper for me to state the reasons by which I am influenced in coming to this conclusion. The object of the bill is to enforce the collection, against the estate of Elisha Wood, of a note for one hundred dollars, given by him to his wife, the present complainant, about three months before his death. It is admitted by complainant’s counsel, that this note can. not, at law, be collected, and therefore resort is had to chancery. It appears from the case, that the personal assets of the estate have been exhausted; and if this claim is sustained, the lands descended must be sold to meet the payment.
Whether this claim can be sustained in chancery, must depend upon the circumstances attending the transaction. It appears that Sally Wood was the second wife of Elisha; that during their cohabitation, children of his, by a former marriage, were living with them, especially two daughters, who are named in the deposition.
On August 16, 1847, the note in controversy was executed, and in November following, the maker died. A witness who was present at the execution of the note, understood from conversation be *447 tween Wood and wife, that there had been a previous note for the like sum, which had been lost; and the witness states that while they were conversing on the subject, Wood told his wife [¡o draw such a note as she liked, and he would sign it. This note was accordingly drawn and signed.
In other conversation with the parties, and especially with the complainant, witness learned that the consideration of this note was as follows: Subsequent to the marriage, and during *the cohabitation of the parties, the complainant had taken in washing, which had been done by herself and the two daughters of Wood by his former marriage, for which she received one hundred dollars, which she loaned to her husband. To one witness she stated that a part of the consideration was milk sold, for which money had been received; that the washing was done by one of the daughters, the ironing by herself, and that another daughter distributed the milk. These were the daughters of Wood, the stepdaughters of the complainant.
As a general rule, contracts between husband and wife are void, both in law and equity. Notes given by the husband to the wife previous to the marriage, and which become due during coverture, are annulled by the marriage; and although such note may remain in the hands of the wife after the death of the husband, can not be enforced against the estate of the husband. Reeve’s Domestic Relations, 86. But where the contract is of that nature that it can not be carried into effect until after the death of the husband, although entered into previous to the marriage, such contract will survive to the wife. If such be the law—if a note given before marriage, but which falls due during coverture, is by the marriage annulled, it would seem strange that a note given by the husband to the wife during coverture, should be held binding upon the husband’s estate after his death. As a general rule, it can not be so held.
But to this general rule I admit there are exceptions. The case of Huber v. Huber’s Adm’rs is one of that character. In that case the complainant had received from the estate of her former husband $100 as her share of the estate, which Huber, the husband, borrowed from her, and gave her his note. This note was enfoi’ced in equity at the suit of the payee against the estate of Huber, after his decease. It will be seen that the consideration of the note was the money of the wife, which was treated by the *448 husband as her separate property, in borrowing the same from her, and giving his note for the payment.
Thef case of Slanning v. Style, 3 P. Williams, 337, was one *in which a widow was permitted to c.ome in ás a creditor* to her husband’s estate, after his decease. In that case, the husband had voluntarily allowed the wife after marriage, for her separate use, to make profit of various articles beyond what was used in the family, and she had accumulated one hundred pounds. This sum she loaned to her husband ; and the court hold, that to the extent of this sum she might come in as a creditor of her husband.
To assimilate the case now before this court to the one last referred to, there should have been evidence to show that Wood had allowed his wife to receive, as her separate property, money for washing and milk. There is no such evidence in the case, unless it is to be presumed from the circumstance of his having executed the note. To my mind, this is not sufficient. Without such previous allowance or agreement, the earnings of the wife must have been the property of the husband; and when he borrowed from-her, he but borrowed that which was his own.
I would not so much object to the decision of the majority of the court, had this money been the avails even of the labor of the wife. But it was not so—at least, but in part. The evidence in the case shows that the washing was done by one step-daughter, the milk distributed by another, and all that was done by the wife was the ironing of the clothes. Now. it does seem to me that it is not in accordance with the principles of equity to take from these step-daughters a part of the inheritance which descended upon them from their ancestor, to pay their step-mother for work which they themselves have performed.
I think the bill should be dismissed.